UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL SWOBODA

VERSUS

KARL MANDERS, ET AL

CIVIL ACTION

NUMBER 14-19-SCR

## RULING ON MOTION TO COMPEL DISCOVERY

Before the court is a Motion to Compel filed by plaintiff Michael Swoboda. Record document number 26. The motion is opposed by defendant Continental Incorporated, Inc. d/b/a Continental Enterprises.[1]

Plaintiff is the president of German Sport Guns GmbH ("GSG"), a German firearm company. Plaintiff filed this suit alleging claims under 42 U.S.C. § 1983 and state law claims for false imprisonment, intentional infliction of emotional distress, defamation, abuse of process, negligence, and unfair competition. In addition to Continental, the plaintiff named as defendants Continental's owner Karl Manders, and employees Denise Mosteller, Jeremiah Pastrick, and Karla Bledsoe. Plaintiff alleged Continental was hired by Heckler & Koch, Inc. ("H&K") to investigate plaintiff's alleged infringement of H&K's trademark on its G36 Airsoft pellet gun design. Plaintiff asserted that Continental's agents and employees registered a design of the H&K

---

[1] Record document number 31. Plaintiff filed a reply memorandum. Record document number 35.

G36 Airsoft gun as a trademark in Louisiana in the name of Heckler & Kock GmbH. Plaintiff alleged that the defendants subsequently acted as potential customers from Brazil and/or Paraguay and convinced the plaintiff to send a sample shipment of GSG products to Walker, Louisiana, which products would then be shipped to Paraguay. Plaintiff alleged that the defendants reported the plaintiff's activities to state and federal authorities and obtained an improper warrant to arrest the plaintiff for violating LSA-R.S. § 14:229, Illegal Use of Counterfeit Trademark. Plaintiff alleged that on April 19, 2013, he was arrested pursuant to the warrant and held at the detention center in Marion County, Indiana until he was released on bail. Plaintiff alleged that on June 25, 2013 all charges against him were dismissed and he was not prosecuted for any criminal violation.

On June 16, 2014, the plaintiff propounded discovery requests to Continental. The requests sought communications between and among the defendants, H&K, and the various third-parties which were involved in the criminal investigation. Plaintiff argued that Continental answered with incomplete and insufficient responses, and made improper objections based on the attorney-client privilege and work product protection. Plaintiff also contested the sufficiency of two privilege logs which contained (1) more than 1,000 emails, most of which pertained to the investigation of the plaintiff; and, (2) 74 items contained in Continental's

2

investigation file.  Plaintiff argued that Continental cannot establish how the items listed on the privilege log are protected based upon the information presented in the logs.  Although the plaintiff received some supplemental responses after conferring with defense counsel about the alleged deficiencies, plaintiff filed this motion to compel.

The disputes over the discovery requests are resolved as follows.[2]

**Interrogatories**

 **Interrogatory Number 4**

Plaintiff requested that Continental identity and describe every lawsuit in which H&K was a party for the past five years

---

[2] Plaintiff initially argued that Continental waived new objections made in its supplemental answers to Interrogatories Nos. 3, 4, and 9 because it did not timely assert these objections. Because the plaintiff did not raise a specific deficiency with Interrogatory No. 3 in its motion, and because the plaintiff's request for supplementation for Interrogatory Nos. 4 and 9 is denied based on the defendant's original objections, the plaintiff's argument regarding the supplemental objections does not need to be addressed.

 Plaintiff also argued that Continental waived all objections, based on attorney client privilege and work product protection, to numerous discovery requests because the defendant provided answers that were "subject to" the respective objections. This argument is unpersuasive. When a responding party makes responses subject to an objection based on a privilege or protection, the party preserves the objection in the event that the response, or a supplemental response, includes information that is privileged or protected. Although this is a common practice, it is problematic when the circumstances do not clearly indicate whether any information or document was actually withheld based on the asserted privilege or protection, e.g. when the privilege or protection is invoked but no privilege log is provided.

which pertained or related to the putative trademark and/or trade dress rights issues. Plaintiff argued that lawsuits involving H&K are relevant because H&K hired Continental to investigate him and such information could lead to admissible evidence.

Plaintiff failed to establish the relevancy of the information requested in this interrogatory. Plaintiff's argument regarding the relevancy is unclear and conclusory. Plaintiff has not demonstrated how information concerning other lawsuits that do not involve the plaintiff have any impact on the issues presented in this case. The interrogatory is also overbroad because the request seeks information concerning a non-party and is not limited to cases involving Continental's services. The motion is denied as to this interrogatory.

**Interrogatory Number 9**

Plaintiff sought information concerning Continental's efforts prior to filing the trademark registration to obtain information which indicated and/or established that the purported design of a pellet gun is a "logo." In response, Continental stated that Jeremiah Pastrick sought guidance from the Louisiana State Secretary of State's office and was instructed to classify the mark as a logo through the online registration system.

Plaintiff failed to clearly explain what additional information he is seeking from this request. Defendant's answer is sufficient.

**Interrogatory Number 10**

Plaintiff requested Continental's reasons for having him arrested and/or prosecuted. Continental responded that H&K had reason to believe the plaintiff was engaged in counterfeiting H&K products and instructed Continental to collect evidence regarding those activities and provide that evidence to the appropriate law enforcement officials, including a "Prosecutor Book" and a sworn affidavit executed by defendant Mosteller.

Continental argued that the plaintiff failed to explain what additional information he believes should be provided in response to this interrogatory. Plaintiff argued that most of the Prosecutor Book was redacted.

Because a copy of the Prosecutor Book was not provided to the court, the court assumes that the redacted information is relevant. Continental chose to produce a redacted copy of the Prosecutor Book in lieu of a detailed written answer. Consequently, Continental failed to sufficiently answer this interrogatory. Continental must provide a supplemental answer by providing an unredacted copy of the Prosecutor Book.

**Interrogatory Number 12**

In this interrogatory the plaintiff asked for the identity of the person whose idea it was for an individual to act as a Brazilian female to communicate with him and/or GSG. Continental stated that it selected various employees including Bledsoe, who is

Brazilian, to participate in the investigation of the plaintiff.

Continental's answer is evasive and insufficient. This interrogatory requested the identity of the person(s) who created and/or directed the plan. Continental must supplement its answer to this interrogatory with the names of those individuals and their roles in the implementation of the plan.

**Requests for Production of Documents**

**Relevancy/Scope of Document Requests**

The dispute over the plaintiff's document requests essentially is a dispute over the relevancy and appropriate scope of those requests, and whether Continental has satisfactorily invoked and established its claims of attorney-client privilege and work product protection. After careful review of all the parties' arguments and exhibits, the count concludes that: (1) Continental's argument that many of the document requests are too broad and encompass documents not relevant to the claims in this case has merit; and, (2) Continental's claims that communications and documents related to the investigation and arrest of the plaintiff fall under the attorney client privilege and work product protection are not sufficiently supported and cannot be upheld.[3]

Continental argued that the plaintiff's discovery requests

---

[3] Even if not specifically addressed in this ruling, all of the arguments and exhibits have been considered. The ruling refers only to those arguments and exhibits essential to deciding the motion.

should be limited to Continental's investigation of the plaintiff's sale of counterfeit G36 guns (i.e., the subject of Continental's investigation) and his arrest before considering the privilege issues. Continental argued that facts concerning Continental's investigation of other companies or individuals for trademark violations or counterfeiting will not tend to establish the plaintiff's state law tort claims or claims arising under 42 U.S.C.§ 1983.

Plaintiff argued that his requests are sufficiently limited temporally to five years or by the stated scope of the question. Plaintiff argued that the discovery seeks information related to similar lawsuits involving Continental, the G36 and related criminal investigations, the G36 alleged trademark, the plaintiff, the purchase of GSG products by Continental, and other Continental investigations including those on behalf of H&K. Plaintiff asserted that this discovery is reasonably calculated to lead to the discovery of admissible evidence because it could demonstrate Continental's prior practices of wrongful prosecution and Continental's knowledge of its wrongful conduct, particularly the registration of the G36 design as a logo and trademark. Plaintiff also argued that such evidence may demonstrate motive and manipulation, or is relevant to show the defendants' *modus operandi*.

Plaintiff failed to show that prior acts of wrongful conduct

by Continental will support his individual claims. Plaintiff's claims – false arrest and imprisonment, abuse of process, and intentional infliction of emotional distress – will be proven by facts concerning the investigation and prosecution of the plaintiff at issue in this case, regardless of any past practices of Continental. The cases relied on the plaintiff concerning the discovery of an insurer's past practices are not controlling and are readily distinguishable from the circumstances and issues in this case. As to knowledge of the alleged wrongful trademark registration, the plaintiff has not provided any substantiated information indicating that Continental has repeatedly done this before. Discovery regarding these other cases and investigations is merely a fishing expedition. Plaintiff's remaining arguments are unsupported and conclusory.

Information/documents concerning the investigation performed by Continental that related to the plaintiff's activities with the G36 or his arrest are relevant to the issues in this case. To the extent the plaintiff's requests for production call for production of documents outside this scope, such information and documents are not reasonably calculated to lead to admissible evidence and do not need to be produced by Continental. Likewise, to the extent the privilege logs contain documents outside of this scope, those

documents do not need to be reviewed or produced.[4]

**Attorney-Client Privilege and Work Product Protection**

In response to the plaintiff's request for production, Continental provided the plaintiff with two privilege logs which asserted Continental's attorney-client privilege and work product objections for two categories of documents: (1) emails located on Continental's computer system which relate to the various investigations conducted by Continental; and, (2) documents contained in Continental's "T-150" investigative file which contains documents related to the plaintiff and other parties believed to be counterfeiting the H&K G36.[5]

As to the emails listed in the first privilege log, the plaintiff asserted that these emails are not protected by attorney-client privilege because Continental was not a client of H&K's counsel and that the internal communications between Continental employees and between Continental and H&K's counsel were not made to obtain a legal opinion or service. Plaintiff also argued that the documents are not shielded from discovery by the work product doctrine because they were not compiled in the anticipation of litigation. Rather, plaintiff argued, it is apparent that the documents were generated in the ordinary course of Continental's

---

[4] Because information related to other cases and investigations is not discoverable in this case, the request for of a protective order does not need to be addressed.

[5] Record document numbers 26-3 and 26-4, Exhibits C and D.

business.[6]

Continental argued that its investigation to collect evidence for purposes of evaluating a potential legal action against the plaintiff was directed by H&K's in-house counsel, and thus it was acting as an agent for H&K's counsel. Continental also argued that the remaining email correspondence between its employees that relate to the plaintiff's G36 investigation listed in the first privilege log, and "T 150" investigative file documents listed in the second privilege log were generated as part of its investigation directed by H & K's in-house counsel and in anticipation of litigation.

Plaintiff's arguments are persuasive. Essentially for the reasons explained in the plaintiff's memoranda, Continental failed to establish the essential elements of the privilege and protection it is claiming.

The attorney-client privilege protects communications, made in confidence, between the client and the attorney for the purpose of obtaining/giving legal advice, and the party invoking it has the burden of demonstrating each element of the privilege. *King v. University Healthcare System, L.C.,* 645 F.3d 713, 720 (5th Cir.

---

[6] Plaintiff affirmatively stated that he is not seeking production of communications and documents involving Continental and its attorneys that are related to or arise out of the attorneys' representation of Continental this case. Record document number 26-1, Plaintiff's Memorandum in Support of Motion to Compel, p. 17; record document number 35, Plaintiff's Reply Memorandum to Defendant's Memorandum in Opposition, p. 14.

2011).[7] The attorney-client privilege is held by the client and not the attorney. *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994).

Continental's conclusory assertions and attempt to rely on the ruling in the Indiana court case are unavailing. Continental has failed to provide sufficient facts to meet its burden of establishing attorney-client privilege as to withheld communications that contain information about the G36 investigation that led to the plaintiff's arrest. Neither Pastrick's[8] declaration of nor anything else in the record supports a finding that the communications Continental claims are privileged were made or received by Continental in the role of a client communicating with an attorney for the purpose of obtaining legal advice.

---

[7] Under Rule 501, Fed.R.Evid., the common law as interpreted by federal courts governs a privilege claim in a federal question case. In a civil case state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. In this case the plaintiff brought both federal claims and supplemental state law claims under Louisiana law. Federal common law and Louisiana law on attorney-client privilege are substantially similar. *See*, *Porter v. Dauthier*, 2014 WL 7013959 (M.D. La., Dec. 12, 2014).

[8] Record document number 31-3, Exhibit 2. Pastrick is a defendant in this case and serves as Continental's vice president and intellectual property counsel. Pastrick stated in paragraph six that on or about May 15, 2012, Stephen Farkas, H&K's in house attorney, directed Continental to investigate GSG's potential infringement of the G36, and that it was understood that Farkas wanted the information as part of his evaluation of potential claims that H&K might bring against GSG. Continental failed to explain how this statement provides facts that demonstrate **its** communications constituted client communications for the purpose of obtaining legal advice.

Continental relies on the Indiana court decision without acknowledging the obvious - the facts relevant to the privilege determination in that case are different.[9] Again, Continental has not shown the communications involved here were made as a client, or that the purpose of its communication with H&K attorney was the transmission of legal advice.

Continental has also failed to meet its burden of establishing that documents containing information about the G36 investigation that led to the plaintiff's arrest, can be withheld based on the doctrine of work-product. In contrast to the attorney-client privilege, the protection afforded by the work product doctrine belongs to both the client and the attorney, either of which may assert it. *In re Grand Jury Proceedings*, *supra.* This is because the work product doctrine applies to documents prepared by or for an attorney in anticipation of litigation, and its purpose is to protect the interest of clients and their attorneys in preventing disclosures about the case by shielding the attorney's mental processes from his adversary. Rule 26(b)(5), Fed.R.Civ.P.; *In re*

---

[9] Record document number 31-4, Exhibit 3. H&K is a plaintiff in the Indiana case, the subject of which is an alleged breach of the settlement agreement it entered into with GSG to resolve prior litigation in which H&K was also a plaintiff. The initial suit involved intellectual property rights related to the MP-5 firearm. To the extent H&K's in-house and trial counsel were involved in communications/documents that also involved Continental acting as its agent, and they were related to their representation and trial preparation in the Indiana litigation, H&K as the client could invoke the protections of attorney-client and work product with regard to those communications.

*Grand Jury Subpoena*, 419 F.3d 329, 338 (5th Cir. 2005). Litigation need not be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. *In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586, 593 (5th Cir. 2000). Documents and materials assembled in the ordinary course of business or pursuant to public requirements unrelated to the litigation or for other nonlitigation purposes are not entitled to work product protection. *U.S. v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir. 1982).

As Continental acknowledged in its memorandum, its business is conducting investigations of suspected infringement of intellectual properly rights. Continental further acknowledged that in 2012 one of the investigations H&K hired it to conduct was an investigation of the plaintiff with regard to the H&K G36.[10] In other words, Continental's customary, regular business activity is to conduct

---

[10] Record document number 31, Defendant's Memorandum in Opposition to Motion to Compel, p.2. Continental stated that it was "instructed" by H&K to do the investigation. Although there are no specific details provided about the contractual or other arrangement by which Continental does investigations for H& K, it is clear that what ever instructions Continental got were in the context of it being hired to perform work for H&K. It is undisputed that Continental is a separate entity and is not a subsidiary or department of H&K. The nature and objective of Continental's business is to perform a particular type of investigation. Continental stated in its memorandum that within the past five years it has or is conducting 76 investigations for H&K, and about 24 of the investigations relate to the G36. *Id.*, pp. 3, 19. Pastrick stated that of these investigations involving the G36, only one investigation involved Swoboda. Pastrick declaration, ¶ 5.

the types of investigations that led to the plaintiff's arrest, which arrest is the basis for the claims asserted in this case. Vague and conclusory statements in Pastrick's declaration and Continental's memorandum of an "understanding" that the documents created during the investigation would be part of Farkas's evaluation of potential claims that H&K might bring against GSG, are simply insufficient to establish that Continental's primary motivation for the creation of the documents was to aid in possible future litigation.[11] It is undisputed that Continental was doing the job it was hired to do - investigating the plaintiff's activities with regard to the G36. The communications and documents were created during the ordinary course of its business, and their creation would have occurred regardless of any potential use by H&K. Continental failed to establish that it is entitled to shield relevant information and documents from discovery in this case based on work product.

Because Continental failed to meet its burden as to its claims

---

[11] The documents and materials could not have been prepared in anticipation of this litigation, which was initiated by the plaintiff after his arrest and the dismissal of the criminal prosecution. As the plaintiff pointed out, Continental also did not identify any possible or potential litigation the documents were created/assembled in anticipation of, nor did Continental present affidavits or declarations from H&K or its attorneys to support its assertions. The fact that the in-house attorney for H&K was the H&K employee who told Continental to do this particular investigation, or had some involvement with it after it started, does not affect Continental's primary motivation for creating the documents.

14

of attorney-client privilege and work product protection, there is no need to address the crime fraud exception or waiver based on the issues in the case or disclosure to third parties.

**Conclusion**

Accordingly, the Motion to Compel filed by plaintiff Michael Swoboda is granted in part and denied in part.

Within 14 days, the defendant Continental shall provide supplemental answers to Interrogatory Numbers 10 and 12 as discussed above. No objections will be allowed.

With regard to the Requests for Production at issue, Continental shall produce the documents and communications withheld that relate to its investigation of the plaintiff with regard to G36, and the events leading to his arrest and the criminal charges against him. Information, communications, and documents outside this scope are not reasonably calculated to lead to the discovery of admissible evidence relevant to the plaintiff's claims, and Continental is not required to produce them. According to the pleadings the investigation leading to plaintiff's arrest was started in May 2012 and the plaintiff was arrested April 19, 2013. However, communications and documents that related to the G36 investigation that led to the criminal charges and the plaintiff's arrest must be produced even if they are outside the specific time frame of May 2012 to April 2013.

In all other respects, the plaintiff's Motion to Compel is denied.

Pursuant to Rule 37(a)(5)(C), Fed.R.Civ.P. each party shall bear their own costs incurred in connection with this motion.

Baton Rouge, Louisiana, April 20, 2015.

*signature*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE