UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL SWOBODA<br>　　Plaintiff | CIVIL NO.: 3:14-cv-00019-SCR |
| VERSUS | MAGISTRATE: STEPHEN C. RIEDLINGER |
| KARL MANDERS, DENISE MOSTELLER, JEREMIAH A. PASTRICK, KARLA BLEDSOE, AND CONTINENTAL INCORPORATED, INC. D/B/A CONTINENTAL ENTERPRISES<br>　　Defendants | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR RECONSIDERATION OF RULING COMPELLING**
**PRODUCTION OF PRIVILEGED DOCUMENTS**

Defendant Continental Incorporated, Inc. d/b/a Continental Enterprises ("Continental") has filed a motion requesting that the Court reverse its April 20, 2015 ruling which requires that Continental produce certain privileged documents.[1] As explained more fully below, the documents are protected by the attorney work-product protection because they were generated during Continental's investigation directed by the General Counsel for Heckler & Koch, Inc. ("H&K"). That investigation was conducted in anticipation of litigation with Michael Swoboda's company GSG and Swoboda himself.

**SUMMARY OF ARGUMENT**

Continental respectfully suggests that the Court's April 20, 2015 ruling was incorrect and manifest injustice would result if Continental were required to

---

[1] The Court's ruling is Rec. Doc. No. 49.

{B1024661.2}

1

disclose the work-product and privileged communications to the plaintiff over the objection of H&K (which owns the privilege). The attached declaration from H&K's General Counsel, Stephen Farkas, clearly shows that H&K directed Continental to gather the documents at issue in anticipation of litigation with GSG and Michael Swoboda related to trademark infringement and counterfeiting concerning H&K's G36 submachine gun. The Farkas declaration is consistent with and provides further support for the November 3, 2014 declaration of Continental's Vice President Jeremiah A. Pastrick. As such, the documents collected by Continental and written communications with H&K's in-house counsel are protected by the attorney work-product doctrine.

## LAW AND ARGUMENT

### A.   Standards under Rules 54 and 59.

Although the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, the Court can reconsider an interlocutory ruling under Rule 54(b).[2] Under that rule, the Court has broad discretion and can consider "whether reconsideration is necessary under the relevant circumstances."[3] The Court may look at the factors used for reconsideration under Rule 59 and 60, but can also grant relief for "any reason [the trial court] deems sufficient."[4]

---

[2] *McClung v. Gautreaux*, 2011 WL 4062387 (M.D. La. 2011).

[3] *Id*. at p. 2.

[4] *Id.*, *citing Brown v. Wichita County, Texas*, 2011 WL 1562567 (N.D. Tex 4/26/11).

{B1024661.2}

2

The Court may also reconsider a ruling under Rule 59(e).[5]  A motion under this ruling "calls into question the correctness of a judgment by the trial court."[6] The motion gives the Court "ample power to prevent what the judge considers a miscarriage of justice."[7]

There are three separate grounds for a Rule 59(e) motion: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or to prevent a manifest injustice."[8]  While a motion under Rule 59 is not intended to rehash arguments, it is appropriate when the Court "misapprehended the facts, a party's position or the controlling law."[9]

**B.     To prevent a manifest injustice, the Court should reconsider its April 20, 2015 ruling.  If the documents at issue are produced, the work-product protection which belongs to H&K and its counsel will be waived.**

   **1.     Swoboda's discovery requests clearly sought privileged documents.**

Among his other requests for production of documents, Swoboda sought: (1) emails located on Continental's computer system related to Swoboda and the sale of G36 counterfeits; and (2) documents contained in Continental's "T-150"

---

[5] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[6] *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994), reh'g denied, 41 F.3d 666 (5th Cir. 1994).

[7] Wright and Miller, Federal Practice and Procedure, 3d Ed., §2803, p. 59.

[8] *Motiva Enterprises LLC v. Wegman*, 2001 WL 246414 (E.D. La. 2001).

[9] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

{B1024661.2}

3

investigative file which contains documents related to Swoboda and other parties believed to be counterfeiting the H&K G36. Continental timely objected to the requests and provided Swoboda with an extensive privilege log for each category of documents and withheld production of the documents which were privileged and/or protected by the attorney-client privilege.[10] Swoboda then filed a motion to compel, seeking production of every document listed on Continental's two privilege logs.[11]

Continental timely objected to producing these documents because they were generated at the direction of H&K's in-house counsel in anticipation of litigation concerning trademark infringement and counterfeiting. Continental submitted a declaration from Jeremiah Pastrick explaining that Continental was directed by H&K's in-house counsel, Stephen Farkas, "to investigate GSG's potential infringement (including counterfeiting) of H&K's G-36 submachine gun."[12] The declaration also explained that the purpose of the investigation was to allow Farkas to evaluate potential claims that H&K might bring against GSG.[13]

---

[10] *See* Rec. Doc. No. 26-1, Exhibits "C" and "D."

[11] Rec. Doc. No. 26 and 26-1 (Memorandum in Support).

[12] Rec. Doc. No. 31-3, ¶6 (Pastrick Declaration).

[13] Pastrick's declaration stated that he understood that the purpose of the investigation was to assist H&K related to potential infringement and counterfeiting in connection with "potential claims that H&K might bring against GSG related to the G36." *See* Pastrick Declaration, ¶6. Although Continental contends that this statement made clear what potential litigation was anticipated—civil claims against GSG for trademark infringement and counterfeiting concerning the G36—the additional declaration from Mr. Farkas submitted by Continental makes this point even more clear.

{B1024661.2}

4

In its motion to compel, Swoboda's primary argument was that the documents sought were generated in the ordinary course of business by Continental and not in anticipation of litigation.[14] Having no factual support for his position, Swoboda casually stated that "[i]t is only logical that Defendant Continental's routine practice is to generate communications, documents and other tangible items…in aid of their investigations."[15] Swoboda also contended that Continental failed to make "clear what litigation" forms the basis for the work-product protection. Swoboda's arguments completely ignored the Pastrick declaration and the fact that Continental was directed by H&K's General Counsel to investigate claims related to GSG's trademark infringement and counterfeiting.[16]

Swoboda also asserted that the investigation "certainly" was not conducted in anticipation of civil litigation because GSG did not and does not sell the G36 airsoft gun in the United States.[17] This statement is nonsensical. The G36 is an H&K product, not a product manufactured by GSG. The basis for H&K's concern was GSG's manufacturing of a counterfeit version of the G36, not the G36 itself. The investigation directed by H&K related to that concern. To the extent that Swoboda's assertion meant that his company does not sell *its* own *version* of the G36 in the United States, this is refuted by the undisputed fact that he did send a G36

---

[14] Rec. Doc. No. 26-1, p. 20.

[15] Rec. Doc. No. 26-1, p. 21.

[16] Rec. Doc. No. 31-3.

[17] Rec. Doc. No. 26-1, p. 20.

{B1024661.2}

5

counterfeit (i.e., the GSG KSK version of the G36) to the United States, and that shipment formed the basis of the charges filed against him.

## 2. The declaration from H&K's General Counsel further supports the privilege which is applicable to the documents at issue.

In its April 20, 2015 ruling, the Court found that the documents identified on Continental's privilege logs were generated in the ordinary course of Continental's business and were not prepared in anticipation of litigation.[18] The Court noted that while the Pastrick declaration explained why Continental believed the documents were created, *i.e.*, in anticipation of H&K's litigation with GSG related to trademark infringement and counterfeiting of the G36, Continental did not submit a declaration from H&K to further explain why the documents were created.[19]

Because the Court appears concerned about whether, in fact, the documents were created in anticipation of litigation as opposed to the normal course of business, Continental has submitted an additional declaration from H&K's General Counsel, Stephen G. Farkas. The Farkas declaration further supports the work-product objections previously asserted by Continental and the statements made in the previously submitted Pastrick declaration. Mr. Farkas further explains the circumstances at issue and reasons why he contacted Continental and directed the investigation at issue.

---

[18] Rec. Doc. No. 49, p. 14.

[19] Rec. Doc. No. 49, p. 14, Fn. 11.

{B1024661.2}

6

Farkas serves as the Vice President for Contracts and General Counsel for H&K.[20] H&K has an active history of civil litigation concerning its intellectual property rights related to its real firearms, as well as paintball and airsoft guns.[21]

Before Farkas contacted Continental in May 2012, he had a factual basis to believe that GSG was manufacturing an authorized airsoft version of the H&K G36 weapon.[22] In addition, because H&K had only one licensee for the G36 (Umarex), Farkas was confident that the GSG-manufactured product was unauthorized.[23] Anticipating that litigation would be required, Farkas determined that he needed additional information regarding GSG's activities concerning the unauthorized G36 airsoft guns.[24] Farkas was also very familiar with GSG and its history of manufacturing unauthorized H&K products, including long-running litigation with GSG concerning a counterfeit version of the H&K MP5 firearm.[25] That litigation started in 2009.

Farkas contacted Continental on or about May 15, 2012, for the purpose of conducting an investigation. In particular, he specifically instructed Continental to conduct an investigation of GSG's activities with respect to GSG's production and

---

[20] *See* Exhibit "1" (Farkas Declaration), ¶2.

[21] *Id*. at ¶5.

[22] *Id*. at ¶6.

[23] *Id.*

[24] *Id*. at ¶7.

[25] *Id*. at ¶9.

sale of unauthorized airsoft versions of the H&K G36.[26] As General Counsel, Farkas was the point of contact between H&K and Continental.[27] The privilege log provided by Continental is consistent with this and shows that Farkas communicated with Continental employees by email relating to the investigation and the information collected.[28]

According to Mr. Farkas's declaration, he anticipated and relied on the fact that the communications with Continental and documents gathered by Continental (and Continental's work-product acting as his agent), would be privileged and protected from disclosure because of the anticipated litigation with GSG.[29] Farkas's expectation was that his communications would be privileged. This was consistent with Mr. Pastrick's understanding of the investigation, as reflected in Pastrick's declaration previously submitted to the Court.[30] The purpose of the investigation was to evaluate potential litigation against GSG related to the counterfeiting of the G36.[31] Although H&K has not yet brought litigation against

---

[26] *Id*. at ¶7.

[27] *Id*. at ¶8.

[28] The email privilege log was submitted by the plaintiff as an exhibit to his motion to compel. *See* Rec. Doc. No. 26-3.

[29] *Id*. at ¶10.

[30] Pastrick Declaration, ¶6.

[31] Farkas Declaration, ¶10.

{B1024661.2}

8

GSG or Swoboda related to the G36, it may do so and Farkas clearly stated that he "would rely on the work-product created by Continental" as part of that litigation.[32]

For that reason, H&K and Farkas both strongly object to the production of the documents identified on Continental's privilege logs that were collected by Continental as part of its investigation, as well as any communications between Continental and H&K.[33]

### 3. The documents listed on the privilege logs were clearly "prepared in anticipation of litigation" by H&K against GSG.

As the Court correctly noted in its ruling, the standard for work-product protection in the Fifth Circuit is whether the "primary motivating purpose" for creating the document was to aid in possible future litigation.[34] The Fifth Circuit has rejected the suggestion by some other courts that the litigation must be imminent.[35] Instead, the litigation in the future must be possible and the document was created to aid in that future litigation.[36]

The Pastrick and Farkas declarations both make clear that a primary purpose for creating the documents at issue was to assist with H&K's potential trademark infringement and counterfeiting related lawsuit(s) against GSG related to the G36 product. Other than GSG's unsupported assertion that it was "logical" to

---

[32] *Id*. at ¶12.

[33] *Id*. at ¶11.

[34] Rec. Doc. No. 49, p. 13. *See also U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

[35] *U.S. v. Davis,* 636 F.2d at 1040.

[36] *Id*.

{B1024661.2}

9

assume the documents were not protected because Continental is in the business of conducting IP investigations, Swoboda made no factual showing to support that conclusion or to show how the documents were used (or could have been used) in the ordinary course of business by H&K.[37] In fact, the Farkas declaration shows just the opposite—that the documents were needed to evaluate and pursue future litigation against GSG and/or Swoboda.

The present situation is no different from an instance in which a plaintiff lawyer hires a products liability expert to analyze how a product is unreasonably dangerous. The mere fact that the <u>expert's</u> routine business is to conduct this type of analysis does not mean that such activity falls within the normal scope of the plaintiff's business, and it is the plaintiff, not the expert, who is the proper focus of the "ordinary course" review.

Applying this analogy here, the "ordinary course" of Continental's business is simply irrelevant because Continental's work-product was created at the direction of Mr. Farkas. His declaration confirms that H&K is in the business of making and selling firearms. Generally investigations into counterfeit goods (and GSG's

---

[37] In finding a lack of work-product protection, other courts have closely examined the "business purpose" for creating the documents. For example, in *Simon v. G.D. Searle*, 816 F.2d 397, 401 (8th Cir. 1987), the Eighth Circuit found no work-product protection for documents generated by a company's risk management department because they were used for a variety of business planning functions such as budgeting, forecasting profits and purchasing insurance. *Simon*, 816 F.3d at 399-401. Similarly, in cases involving a first party insurance claim, courts have concluded that documents created by the insurer's claims investigators are not work-product because they are based on the contractual duty to adjust the claim. *See Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993). *See also Lean v. Evans Industries, Inc.*, 1996 WL 325588 (E.D. La. 1996) (Court found that no work-product applied to investigative reports that are routinely prepared after all incidents, regardless of the possibility of litigation).

{B1024661.2}

counterfeit of the G36 in particular), are not regular business activities of H&K. Therefore, the work-product created for this specific purpose was not, and should not be, considered as part of H&K's ordinary business.

> **4. The discovery ruling issued in Indiana is directly on point and support's Continental's position that it was acting as an agent for H&K, supporting the work-product protection.**

In its ruling, the Court distinguished the December 2012 decision issued in the Indiana litigation involving H&K and Swoboda's company because the "facts relevant to the privilege determination in that case are different."[38] However, in its ruling, this Court recognized that in the context of that litigation, H&K (as opposed to Continental) was entitled to attorney-client privilege and work-product protection over documents created by Continental in anticipation of litigation by H&K.[39] The Indiana court reached its ruling—in part—based on the attorney-agent exception to the attorney client privilege and work-product doctrine.[40]

As indicated in the Farkas declaration, H&K has asserted expressly and specifically the objections of privilege and work-product in response to the discovery requests propounded by the plaintiff. In addition, Continental suggests that the

---

[38] Rec. Doc. No. 49, p. 12, Fn 9.

[39] *Id.* ("To the extent H&K's in-house and trial counsel were involved in communications/documents that also involved Continental acting as its agent, and they were related to their representation and trial preparation of the Indiana litigation, H&K as the client could involve the protections of attorney-client and work product with regard to those communications.").

[40] *See* Rec. Doc. No. 31-4, p. 6 ("In other words, the subject matter of the documents in this case relates directly to the litigation and the time period in which they were created demonstrates that they were created in anticipation of because of litigation. Thus, documents involving Continental fall within the attorney-agent exception.")

{B1024661.2}

11

"attorney-agent" protection applies here as it did in Indiana. Like in Indiana related to the MP5 litigation, Mr. Farkas' declaration makes clear that Continental was working at his direction in anticipation of future litigation with GSG and/Swoboda related to the G36.[41] Therefore, like Indiana, this Court should conclude that documents generated by Continental in connection with its investigation of GSG and Swoboda related to the G36, fall within the attorney-agent protection.

### 5. Swoboda has not established that he has a substantial need for the documents and that he cannot get the information elsewhere.

A party seeking documents protected by the work-product protection must also show that it has as substantial need for the documents and that the party is unable to obtain the substantial equivalent without undue hardship.[42] Swoboda has made no attempt to satisfy this standard, instead he simply states that "he has no other way to obtain the withheld information" and has a "substantial need" for it. He has not offered the Court any explanation (or proof) of what efforts he has undertaken to learn the information that may be contained in the documents or how he is unable to do so. Without this showing, and because the documents at issue are protected by the work-product protection, the Court should not order that the documents listed on the privilege logs be produced.

---

[41] Farkas Declaration, ¶10, 12.

[42] Federal Rule of Civ. Pro. Rule 26(b)(3)(a)(ii).

{B1024661.2}

12

## CONCLUSION

For the reasons explained in this memorandum and as demonstrated by the declarations submitted by Continental, the Court should reverse its April 20, 2015 ruling, recognize the applicability of the attorney-work product doctrine related to the documents at issue, and order that Continental is not required to produce those documents.

Respectfully submitted,

 s/Ryan E. Johnson
James C. Percy (La. Bar No. 10413)
Email: jpercy@joneswalker.com
Ryan E. Johnson (La. Bar No. 26352), T.A.
Email:  rjohnson@joneswalker.com
Christopher Cazenave (La. Bar No. 32795)
Email: ccazenave@joneswalker.com
Jones Walker LLP
8555 United Plaza Blvd., 5th floor
Baton Rouge, LA  70809
Telephone: (225) 248-2000
Facsimile:  (225) 248-3080
*Counsel for Karl Manders, Denise Mosteller, Jeremiah A. Pastrick, Karla Bledsoe, and Continental Incorporated, Inc. d/b/a Continental Enterprises*

**CERTIFICATE**

I certify that on this day, I filed the foregoing motion via the court's CM/ECF system and that the following counsel will be served with this pleading through that system:

>L.J. Hymel, Jr. (Ljhymel@hymeldavis.Com)
>Tim P. Hartdegen (Thartdegen@hymeldavis.Com)
>Michael Reese Davis, Sr. (Mdavis@hymeldavis.Com)
>Ryan M. Falgoust (Rfalgoust@hymeldavis.Com)
>Hymel, Davis & Petersen, LLC
>10602 Coursey Boulevard
>Baton Rouge, LA 70816

Baton Rouge, Louisiana, on May 18, 2015.

*s/ Ryan E. Johnson*
Ryan E. Johnson