UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL SWOBODA

CIVIL ACTION

VERSUS

NO. 14-19-EWD

KARL MANDERS, ET AL.


**RULING ON RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS, AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS, AND MOTION FOR RECONSIDERATION**

Before the Court is a Renewed Motion for Judgment on the Pleadings[1] and an Amended Motion for Judgment on the Pleadings[2] filed by Defendants, Denise Mosteller, Jeremiah A. Pastrick, Karl Manders, Karla Bledsoe, and Continental Incorporated, Inc. (collectively, "Defendants") and Plaintiff's Motion for Reconsideration.[3] Each Motion is opposed.[4] For the reasons set forth herein, Defendants' Amended Motion for Judgment on the Pleadings is GRANTED and Plaintiff's claims of false arrest and abuse of process are dismissed. Plaintiff's Motion for Reconsideration is GRANTED and the Court finds that Plaintiff has standing to bring a claim under the Louisiana Unfair Trade Practices Act.

I.      **Background**

Plaintiff, Michael Swoboda ("Plaintiff"), is the president of German Sports Guns GmbH ("GSG"), a German firearms company.[5] Plaintiff alleges that Continental Incorporated, Inc.

---

[1] R. Doc. 79.

[2] R. Doc. 89. In this Court's December 9, 2015 Ruling and Order, this Court deferred ruling on the sufficiency of the allegations supporting Plaintiff's claims for false arrest and abuse of process. Defendants' Amended Motion for Judgment on the Pleadings addresses those claims. Disposition of the Amended Motion for Judgment on the Pleadings resolves all outstanding issues raised in Defendants' Renewed Motion for Judgment on the Pleadings.

[3] R. Doc. 93.

[4] *See*, R. Docs. 95 and 96.

[5] R. Doc. 77, ¶ 1.

1

("Continental") was hired by Heckler & Koch, Inc. ("H&K") to investigate Plaintiff's alleged infringement of H&K's intellectual property in its G36 Airsoft pellet gun design.[6]  Plaintiff alleges that Continental's investigation was "really a scheme to unlawfully entrap, charge, and convict" him of a crime and thereby harm Plaintiff's professional reputation and "further Continental's and H&K's business."[7]   Specifically, Plaintiff alleges that Continental's agents and employees improperly registered a design of the H&K G36 Airsoft gun as a trademark in Louisiana in the name of Heckler and Koch GmbH[8] and thereafter acted as potential customers from Brazil and/or Paraguay and convinced Plaintiff to send a sample shipment of GSG products to Walker, Louisiana, which products would then be shipped to Paraguay.[9]

Defendants allegedly reported to Livingston Parish Sheriff's Office ("LPSO") detectives that Plaintiff was violating La. R.S. § 14:229, which prohibits the sale, possession with intent to sell, or transfer for compensation "anything of value having a counterfeit trademark."[10]  Plaintiff alleges that on April 19, 2013, he was arrested in Marion County, Indiana pursuant to an arrest warrant issued by the LPSO and the 21st Judicial District Court of Louisiana[11] and "kept at the Marion County, Indiana, detention processing center for over 20 hours and then transferred to the Marion County detention center for four nights and five days before he had the opportunity to

---

[6] R. Doc. 77, ¶¶ 13-14.

[7] R. Doc. 77, ¶ 15.

[8] R. Doc. 77, ¶ 19.  Plaintiff alleges that the day after Defendants accused him of violating La. R.S. § 14:229, Defendant Pastrick "registered a purported 3-D design of the H&K 'G36 Airsoft' gun as an alleged trademarked 'logo' in the name of Heckler & Koch GmbH ('HKG')" and that Defendants knew such registration was invalid because "HKG does not own a trade dress registration registered before the U.S. Patent & Trademark Office for the firearm shape or design covered by the HKG 3-D design registration" and "Louisiana law does not protect product designs, shapes, or configurations."  R. Doc. 77, ¶¶ 19-21.

[9] R. Doc. 77, ¶¶ 24-28.

[10] R. Doc. 77, ¶¶ 17-18.

[11] R. Doc. 77, ¶ 51.

make bail…."[12]  Plaintiff alleges that on June 25, 2013, "the 21st Judicial District Attorney's Office for the Parish of Livingston dismissed all charges against" him and "declined to prosecute him for any criminal violations."[13]

Plaintiff alleges that Defendants "regularly conspired with and acted in concert with" federal and state agents to effectuate his unlawful arrest[14] and complains that the LPSO did not conduct an independent investigation and instead completely relied on Defendants' investigation.[15]  In particular, Plaintiff alleges that Defendant Mosteller implied that third party investigators "or even Paraguayan authorities" were involved in Defendants' investigation,[16] failed to "divulge…that GSG had never sold firearms in Louisiana"[17] and "misled the court into believing that Mr. Swoboda was aware that the items were being shipped to Louisiana" (rather than being routed through Louisiana to Paraguay),[18] failed to divulge that "Defendants registered the purported trademarks in Louisiana on behalf of H&K the day after they reported to LPSO that Mr. Swoboda was violating La. R.S. § 14:229,"[19] and falsely represented in an affidavit for Plaintiff's arrest that Plaintiff was violating H&K's intellectual property rights and that the products sent by GSG were counterfeit.[20]  Plaintiff further alleges that "when the shipment of the alleged counterfeit goods were brought to the LPSO by Defendants, the LPSO took pictures of the alleged counterfeit firearms and sent them to Defendant Manders, who certified that the firearms were counterfeit

---

[12] R. Doc. 77, ¶¶ 59-60.

[13] R. Doc. 77, ¶ 62.

[14] R. Doc. 77, ¶¶ 34-38.

[15] R. Doc. 77 ¶¶ 39-43.

[16] R. Doc. 77, ¶ 46.

[17] R. Doc. 77, ¶ 47.

[18] R. Doc. 77 ¶ 50.

[19] R. Doc. 77, ¶ 48.

[20] R. Doc. 77, ¶¶ 48 & 49.

based on his review of the pictures.   The LPSO did not independently confirm the alleged counterfeit nature of the firearms."[21]   The LPSO is not a party to this proceeding.

In a ruling issued September 30, 2015, this Court granted in part the Motion for Judgment on the Pleadings filed by Defendants.   Therein, the Court dismissed Plaintiff's false arrest, Eighth Amendment, false imprisonment, abuse of process, and Louisiana Unfair Trade Practices Act ("LUTPA") claims and granted Plaintiff leave to file an amended complaint "which alleges specific facts to state such claims."[22]   On October 23, 2015, Plaintiff filed his Amended Complaint.[23]

On November 6, 2015, Defendants filed a Renewed Motion for Judgment on the Pleadings.[24]   Therein, Defendants moved for judgment on the pleadings dismissing Plaintiff's abuse of process and LUTPA claims.   In their motion, Defendants asserted that the Amended Complaint did not "reassert [Plaintiff's] claims for false arrest or false imprisonment."[25]   In response, Plaintiff pointed out that he was still asserting a claim for false arrest under 42 U.S.C. § 1983.[26]   On December 9, 2015, this Court ruled in part on the Renewed Motion for Judgment on the Pleadings.[27]   The Court dismissed Plaintiff's claim for false imprisonment.[28]   The Court also dismissed Plaintiff's LUTPA claim, reasoning that to state a claim under LUTPA, a plaintiff must be a consumer or competitor of the defendant.[29]   The Court deferred consideration of the

---

[21] R. Doc. 77, ¶ 43.

[22] R. Doc. 74, p. 7.

[23] R. doc. 77.

[24] R. Doc. 79.

[25] R. Doc. 79-1, p. 2.

[26] R. Doc. 81, p. 3.

[27] R. Doc. 85.

[28] R. Doc. 85, p. 4.

[29] R. Doc. 85, p. 5.

sufficiency of Plaintiff's allegations supporting his claims for false arrest and abuse of process, explaining that due to the structure of Plaintiff's Amended Complaint, it was understandable that Defendants concluded that Plaintiff had dropped his claim for false arrest.[30]  The Court therefore gave Defendants "an opportunity to file an amended motion to dismiss the purported false arrest claim…."[31]  Reasoning that "the sufficiency of the allegations supporting the false arrest claim are relevant to deciding whether the plaintiff has stated a claim for abuse of process," this Court also deferred ruling on Defendants' renewed motion to dismiss the abuse of process claim.[32]

On December 23, 2015, Defendants filed their Amended Motion for Judgment on the Pleadings, asserting that Plaintiff still has not stated sufficient facts to support a claim for false arrest or abuse of process.[33]  On January 5, 2016, Plaintiff filed a Motion for Reconsideration of this Court's ruling dismissing his claim under the LUTPA.[34]

## II.  Law and Analysis

### A.  Judgment on the Pleadings

#### 1. Legal Standard

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "In deciding whether the complaint

---

[30] R. Doc. 85, p. 3.

[31] R. Doc. 85, p. 4.

[32] R. Doc. 85, p. 4.

[33] R. Doc. 89.

[34] R. Doc. 93.

states a valid claim for relief, [courts] accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* citing *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Courts, however, will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* quoting, *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A court may grant a motion for judgment on the pleadings only if "there are no disputed issues of material fact and only questions of law remain." *Brittan Commc'ns Intern. Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

## 2. False Arrest

Defendants argue that Plaintiff has not plead facts to show that the arrest warrant issued by the LPSO and the 21st Judicial District Court was facially void.[35] In response, Plaintiff argues that the warrant was void on its face because it was not supported by probable cause and reiterates his allegations regarding the LPSO's lack of independent investigation and Defendants' intentional misrepresentation of facts.[36]

"'Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest.'" *Maier v. Green*, 485 F.Supp.2d 711, 718 (W.D. La. 2007) quoting *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977). "A claim of false arrest requires a plaintiff to demonstrate that the arrest was made without a warrant or with a warrant void on its face." *Tassin v. Jones*, 2001 WL 946349, at * 2 (E.D. La. Aug. 20, 2001) citing *Duboe v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990).[37] Here, although Plaintiff alleges that Defendants provided

---

[35] R. Doc. 89-1, p. 4. Specifically, Defendants assert Plaintiff has not alleged any deficiencies in the form or content of the warrant required by Louisiana Code of Criminal Procedure article 203, that allegedly incorrect statements in a supporting affidavit do not invalidate the warrant, and that Swoboda's allegations that LPSO did not conduct an independent investigation are conclusory and unsupported. R. Doc. 89-1, pp. 5-8.

[36] R. Doc. 95, pp. 4-7.

[37] Both parties agree that this is the standard. *See*, R. Docs. 89-1, p. 4 & 95, p. 4.

false information leading to his arrest, he has not asserted any basis upon which this Court could find the warrant issued by the 21st Judicial Court was void on its face.[38]   In such a circumstance, Plaintiff has not alleged sufficient facts to support a claim of false arrest.  *See*, *e.g.*, *Edmond v. Hairford*, 539 So. 2d 815, 818 (La. App. 3 Cir. 1989) ("The warrant issued by the magistrate in this case was not null and void on its face.  Although the defendant falsely swore that plaintiff committed theft of his watch, simple inspection of the warrant would not disclose the infirmity behind the issuance of the warrant….[I]n the strict sense contemplated by our law, we doubt that defendant's action may be characterized as a false arrest or false imprisonment.");  *Stark v. Eunice Superette, Inc.*, 457 So. 2d 291, 294 (La. App. 3 Cir. 1984) ("To prove false arrest, the plaintiff must show that the arrest was made without any legal process or warrant or under a warrant null and void on its face.  Plaintiff was arrested pursuant to a valid arrest warrant issued by the City Court of Eunice.  Plaintiff clearly cannot recover as a victim of a false arrest.").[39]   Accordingly, Defendants' Amended Motion for Judgment on the Pleadings seeking dismissal of Plaintiff's claim of false arrest is GRANTED.[40]

---

[38] Moreover, Plaintiff has not alleged that Defendants actually arrested him.

[39] Plaintiff's allegations that his arrest by the LPSO was allegedly due to Defendants' false statements strike the Court as more closely aligned with a potential defamation or malicious prosecution claim.  *See*, *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669 & n. 20 (La. 2006) (considering the issue of conditional or qualified immunity in the context of Plaintiff's defamation claim against restaurant employees who made allegedly defamatory statements to police when they reported that an occupant of a vehicle in the drive-through lane of the restaurant had attempted to buy food with a counterfeit one hundred dollar bill).  Plaintiff is making a defamation claim in this case.  *See*, R. Doc. 77, ¶¶ 86-93.

[40] Although the Court dismisses Plaintiff's claim for false arrest, Plaintiff appears to have set forth sufficient facts in the Amended Complaint to assert a claim for malicious prosecution.  "The distinction between actions for false imprisonment and those for a malicious prosecution are far apart. In a false imprisonment, the arrest is made either without any legal process or warrant, or under a warrant null upon its face. In a malicious prosecution, the proceedings are had in pursuance of legal process, maliciously and wrongfully obtained." *Barfield v. Marron*, 62 So. 2d 276, 220 (La. 1952).  *See also*, *Winn v. City of Alexandria*, 685 So. 2d 281, 283 (La. App. 3. Cir. 1996) ("while an action for *malicious prosecution* may be brought where an individual is aggrieved by the consequences that flow from the governing authority's having obtained a facially valid arrest warrant, the same cannot be said of a claim for *false arrest* or imprisonment, even where a peace officer's statements giving rise to an arrest warrant are proven to be untrue."). The elements of a malicious prosecution claim are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause

### 3. Abuse of Process

"The essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (citations omitted). "The precise inquiry involves the misuse of a process already issued whereby a party attempts to obtain some result not proper under the law." *Id.* Importantly, "[t]he tort of abuse of process involves the malicious use of a legal process *after* the process has been instituted." *Id. See also*, *Laitram Machinery, Inc. v. Carnitech A/S*, 884 F.Supp. 1074, 1086 (E.D. La. 1995) ("Because [plaintiff's] abuse of process claim involves [defendant's] institution of the lawsuit and not anything done…*after* the lawsuit was instituted, [defendant] is entitled to summary judgment as a matter of law on the abuse of process claim under *Duboue*."); *Stark v. Eunice Superette, Inc.*, 457 So. 2d 291, 294 (La. App. 3 Cir. 1984) (affirming trial court's ruling in favor of defendant

---

for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d at n. 20 (La. 2006). Plaintiff has not asserted a formal count of malicious prosecution in his Amended Complaint. However, the Amended Complaint alleges that Defendant Mosteller intentionally misrepresented or failed to divulge pertinent facts in an affidavit for Plaintiff's arrest in an effort to damage Mr. Swoboda's professional reputation by having him unlawfully arrested. R. Doc. 77, ¶¶ 45-50. Plaintiff further alleges that Defendants knew H&K's trademark in the 3-D design was invalid and registered same in an effort to "use Louisiana's criminal court process to intentionally injure Mr. Swoboda and his professional reputation…." R. Doc. 77, ¶¶ 20-22. Plaintiff alleges that Defendants deceived him into sending the allegedly counterfeit goods into Louisiana. R. Doc. 77, ¶¶ 25-26. Plaintiff also alleges that his arrest caused "substantial emotional and physical distress," and that following his arrest, the charges against him were ultimately dismissed and his motion for expungement granted. Rec. Doc. 77, ¶¶ 60-63. Accordingly, while the Court makes no judgment regarding Plaintiff's ability to prove a claim for malicious prosecution, it appears that the facts upon which relief could be granted for such a claim have been alleged in the Amended Complaint. *See*, *Martin v. State Farm Fire and Cas. Co.*, 2010 WL 1416764, at *3 (E.D. La. April 1, 2010) ("Federal Rule of Civil Procedure 8, and the relevant case law, do not 'require an inordinate amount of detail or precision.' *Smith v. Amedisys, Inc.*, 298 F.3d 434, 451 (5th Cir.2002), quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir.2000). 'The form of the complaint is not significant *if it alleges the facts upon which relief can be granted*, even if it fails to categorize correctly the legal theory giving rise to the claim.' *Id.* (emphasis added). Fed. R. Civ. Proc. 8(a) merely requires that 'a complaint give "notice of the circumstances which give rise to the claim," and "sufficient information to outline the elements of [the plaintiff's] claim or to permit inferences to be drawn that these elements exist."' *Stewart Title Guar. Co. v. Derivaux*, No. 07–199, 2009 WL 5216050, at *3 (S.D.Miss. Dec.29, 2009), quoting *Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir.1990).")

finding no abuse of process where "[n]owhere is there any suggestion that defendant's owner or employees misused the criminal process once it was instituted.").

Here, Plaintiff alleges that "LPSO did not conduct an independent investigation into Mr. Swoboda and issued a warrant based solely on Defendants' misrepresentations in the affidavit for arrest."[41]  While Plaintiff has alleged Defendants' malicious purpose in "trump[ing] up supposed probable cause and push[ing] law enforcement and the district attorney to arrest and prosecute Mr. Swoboda as retribution for GSG alleging that H&K committed fraud with regard to the settlement agreement in the Indiana litigation,"[42] Plaintiff has not alleged Defendants abused any court-related process after he was arrested.  Under such circumstances, Plaintiff has not alleged sufficient facts to state a claim for abuse of process. *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (although defendant improperly arrested plaintiff "out of anger," defendant was not liable for abuse of process because, although he "instituted the process," defendant "did nothing further in carrying it to its conclusion.").[43]   Accordingly, Defendants' Amended Motion for Judgment on the Pleadings seeking dismissal of Plaintiff's claim of abuse of process is GRANTED.

---

[41] R. Doc. 95, p. 8.

[42] R. Doc. 95, p. 9.  In his Amended Complaint, Plaintiff alleges that H&K sued GSG in an intellectual property lawsuit in 2009 in the United States District Court, Southern District of Indiana and that the case settled in October, 2009.  R. Doc. 77, ¶ 9.  Plaintiff further alleges that in August, 2011, H&K sued GSG again alleging breach of the settlement agreement.  R. Doc. 77, ¶ 11.

[43] Plaintiff relies on *Carmouche v. Oubre*, 394 So. 2d 805 (La. App. 4 Cir. 1981) for his assertion that he has stated a claim for abuse of process.  *See*, R. Doc. 95, p. 8.  In *Carmouche*, plaintiff sued a deputy sheriff, alleging that defendant falsely arrested, detained and imprisoned plaintiff based on a "long standing hatred" and without probable cause and that defendant had an "ulterior motive and purpose in willfully using process improper in the regular administrative handling and prosecution of a routine, single-vehicle traffic violation proceeding."  *Id*. at 807.  To the extent *Carmouche* is inconsistent with *Duboue*, this Court declines to follow it.

### B.  Motion for Reconsideration

"When, as here, a party's motion to reconsider concerns an order that did not dispose of all the claims or parties, the motion is governed by Federal Rule of Civil Procedure ('Rule') 54(b)." *Stewart v. Gautreaux*, 2014 WL 991735, at *3 (M.D. La. Mar. 13, 2014) citing *Gulf Fleet Acquisition, LLC v. Thoma-Sea Ship Builders, LLC*, 282 FRD 146, 151-52 (E.D. La. 2012).  Rule 54(b) permits a court to revise an interlocutory order "at any time before entry of judgment adjudicating all of the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Livingston Downs v. Jefferson Downs,* 259 F.Supp.2d 471, 474–75 (M.D. La.2002) citing *Zapata Gulf Marine, Corp. v. Puerto Rico Maritime Shipping Authority,* 925 F.2d 812, 815 (5th Cir.1991). District courts have considerable discretion in deciding whether to reconsider an interlocutory order.  *Stewart v. Gautreaux*, 2014 WL 991735, at *3 (M.D. La. Mar. 13, 2014).  "There are three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Wagster v. Gautreaux*, 2014 WL 46638, at *2 (M.D. La. Jan. 6, 2014) citing *J.M.C. v. Louisiana Bd. Of Elementary and Secondary Educ.*, 584 F.Supp.2d 894, 896 (M.D. La. 2008).  Here, Plaintiff asserts that reconsideration of this Court's previous ruling dismissing his claims under the LUTPA based on a lack of standing is necessary to correct clear legal error.[44]

As noted above, this Court previously dismissed Plaintiff's claim under the LUTPA, reasoning that under Fifth Circuit precedent, "a private right of action under the LUTPA is limited to direct consumers or to business competitors of the defendants."[45]  In so holding, this Court

---

[44] R. Doc. 93-1, pp. 4-6.

[45] R. Doc. 85, p. 6, citing *Tubos de Acero de Mexico, S.A. v. American Intl. Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002).

declined to follow the Louisiana Supreme Court's plurality opinion in *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053 (La. 2010).

The Court agrees with Defendants that it is not "required to follow" *Cheramie*.[46]  However, the Court now finds that its previous dismissal based on pre-*Cheramie* Fifth Circuit precedent regarding standing ignored the "bedrock principles of *Erie v. Tompkins*, 304 U.S. 64 (1938), which require a federal court sitting in diversity to apply the law of the state as declared by its legislature or the state's highest court."  *Burgers v. Bickford*, 2014 WL 4186757, at 3 (E.D. La. Aug. 22, 2014).  "Thus, for a federal court the proper inquiry is not whether *Cheramie* is controlling authority in light of its plurality status but rather how the decision factors into the *Erie* 'guess' that this Court must make when applying state law.  In the realm of *Erie*, *Cheramie* is not irrelevant even if the state's lower courts would consider it non-binding."  *Id*.  Plaintiff correctly points out that following *Cheramie*, Louisiana appellate courts as well as the vast majority of federal district courts have followed the plurality opinion and found that private parties have a right of action under the LUTPA.[47]  Accordingly, while *Cheramie* may not be binding upon this Court, it is instructive to the issue of standing.

In light of *Cheramie*, as well as the Louisiana Court of Appeal decisions following same, the Court finds that Plaintiff has standing to assert a claim under the LUTPA.  *See, e.g.*, *First American Bankcard, Inc. v. Smart Business Tech., Inc. et al.*, 2016 WL 1437165, at *9 (E.D. La. April 12, 2016) ("In light of *Cheramie*, the Court finds that Plaintiff does have standing to bring its LUTPA claim."); *Max Access, Inc. v. Gee Cee Company of La, Inc.*, 2016 WL 454389, at *4 (E.D. La. Feb. 5, 2016) ("Under the expanded understanding of LUTPA standing signaled to in

---

[46] R. Doc. 93-1.

[47] R. Doc. 93-1, pp. 5-6.

*Cheramie*, it would seem the statute applies to defendants' claim."). Accordingly, Plaintiff's Motion for Reconsideration is GRANTED.[48]

## III.    Conclusion

For the reasons set forth herein, Defendants' Amended Motion for Judgment on the Pleadings[49] is GRANTED and Plaintiff's claims of false arrest and abuse of process are dismissed. Plaintiff's Motion for Reconsideration[50] is GRANTED and the Court finds that Plaintiff has standing to bring a claim under the Louisiana Unfair Trade Practices Act.

Signed in Baton Rouge, Louisiana, on April 21, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[48] The Court has no opinion regarding Plaintiff's ability to ultimately prove such claim.

[49] R. Doc. 89.  As noted above, disposition of the Amended Motion for Judgment on the Pleadings also resolves all outstanding issues originally deferred in this Court's December 9, 2015 Ruling and Order on Defendants' Renewed Motion for Judgment on the Pleadings.  *See*, R. Doc. 79 and 85.

[50] R. Doc. 93.