UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL SWOBODA

                                                CIVIL ACTION

VERSUS

                                                14-19-EWD

KARL MANDERS, ET AL.

## RULING ON PLAINTIFF'S SECOND MOTION TO COMPEL

Before the Court is a Second Motion to Compel[1] filed by Plaintiff, Michael Swoboda ("Plaintiff"). By his motion, Plaintiff seeks Continental Incorporated, Inc.'s ("Continental's") investigatory file and communications with Hecker & Koch, Inc. and Hecker & Koch GmbH (collectively, "H&K") and various third parties which were involved in Continental's investigation into Mr. Swoboda. In response, Continental asks the Court to defer any ruling on the Motion to Compel until the Fifth Circuit resolves H&K's pending appeal.[2]

For the reasons set forth herein, Plaintiff's Second Motion to Compel[3] is GRANTED IN PART AND DENIED IN PART.

### I.      Background

Plaintiff is the president of German Sports Guns GmbH ("GSG"), a German firearms company.[4] Plaintiff alleges that Continental was hired by Heckler & Koch, Inc. to investigate Plaintiff's alleged infringement of H&K's trademark on its G36 Airsoft pellet gun design (the "G36").[5] Plaintiff alleges that Continental's investigation was "really a scheme to unlawfully

---

[1] R. Doc. 98.

[2] R. Doc. 101. H&K previously moved to intervene "for the limited purpose of addressing discovery seeking the disclosure of their privileged information." R. Doc. 71. The Court denied the motion to intervene and H&K has appealed that ruling. R. Doc. 97.

[3] R. Doc. 98.

[4] R. Doc. 77, ¶ 1.

[5] R. Doc. 77, ¶¶ 13-14.

entrap, charge, and convict" him of a crime.[6]   Specifically, Plaintiff alleges that Continental's agents and employees improperly registered a design of the H&K G36 Airsoft gun as a trademark and convinced Plaintiff to send a sample shipment of allegedly infringing goods to Walker, Louisiana.[7]   Plaintiff alleges that Defendants "regularly conspired with and acted in concert with" federal and state agents to effectuate his unlawful arrest.[8]

On September 26, 2014, Plaintiff filed a motion to compel seeking, *inter alia*, production of documents related to Continental's investigation.[9]   Specifically, Plaintiff sought "any and all communications between and among Defendants, H&K, and the various third-parties which were involved in the criminal investigation."[10]   In response to Plaintiff's requests, Continental asserted that many of the documents requested were not related to its investigation of Swoboda or his arrest, and instead sought documents about Continental's other intellectual property investigations.[11] Continental also asserted that many of the requests sought documents protected by the attorney-client and/or work product privileges and provided Plaintiff with two privilege logs. Continental explained that its "attorney-client privilege and work product objections cover two major categories of documents sought by Swoboda's discovery requests: (1) emails located on Continental's computer system which relate to the various investigations conducted by Continental, a small portion of which relate to Swoboda and an even smaller portion of which relate to Swoboda's sale of G36 counterfeits; and (2) documents contained in Continental's 'T-

---

[6] R. Doc. 77, ¶ 15.

[7] R. Doc. 77, ¶¶ 24-28.

[8] R. Doc. 77, ¶¶ 34-38.

[9] R. Doc. 26.

[10] R. Doc. 26-1, p. 5.

[11] *See*, R. Doc. 31, p. 1.

150' investigative file which contains documents related to Swoboda and other parties believed to be counterfeiting the H&K G36."[12]

The Court ruled on the Motion to Compel on April 20, 2015.[13] Therein, the Court found that many of Plaintiff's document requests were too broad and encompassed documents not relevant to the claims.[14] The Court rejected Continental's claims that certain documents were privileged. Regarding the attorney-client privilege, the Court found that the documents were not privileged because nothing in the record supported "a finding that the communications Continental claims are privileged were made or received by Continental in the role of a client communicating with an attorney for the purpose of obtaining legal advice."[15] Regarding the work product privilege, the Court reasoned that Continental's business "is conducting investigations of suspected infringement of intellectual property rights" and therefore "Continental's customary, regular business activity is to conduct the types of investigations that led to the plaintiff's arrest, which arrest is the basis for the claims asserted in this case."[16] Accordingly, the Court found no work-product privilege applied because "[t]he communications and documents were created during the ordinary course of [Continental's] business, and their creation would have occurred regardless of any potential use by H&K."[17] The Court therefore compelled production of

---

[12] R. Doc. 31, p. 16.

[13] R. Doc. 49.

[14] With regard to overbreadth, Continental argued that the discovery requests should be limited to Continental's investigation of Plaintiff's sale of counterfeit G36 guns and his arrest and that facts concerning Continental's investigation of other companies or individuals was not relevant. The Court found that "[i]nformation/documents concerning the investigation performed by Continental that related to the plaintiff's activities with the G36 or his arrest are relevant to the issues in this case." R. Doc. 49, p. 8. The Court continues to agree with this reasoning and makes no modification to this aspect of its previous order.

[15] R. Doc. 49, p. 11.

[16] R. Doc. 49, pp. 13-14.

[17] R. Doc. 49, p. 14.

"documents and communications withheld that related to its investigation of the plaintiff with regard to G36, and the events leading to his arrest and the criminal charges against him."[18]

Following the April 20, 2015 Ruling, Continental and H&K made numerous attempts to block production of the allegedly privileged documents. On May 18, 2015, Continental filed a Motion for Reconsideration.[19] On June 12, 2015, this Court denied Continental's Motion for Reconsideration.[20] On July 17, 2015, Continental moved to certify the Court's ruling on the Motion to Compel for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and to stay the Court's ruling pending appeal.[21] On December 22, 2015, this Court denied Continental's motion for certification and for stay.[22]

On July 27, 2015, H&K moved to intervene in the lawsuit "for the limited purpose of addressing discovery seeking the disclosure of their privileged information."[23] H&K urged this Court to "consider the discovery requests and privilege issues from the perspective of HK as the holder of the privilege and the party affected by the ordered disclosure"[24] and asserted that "it is irrelevant whether Continental Enterprises was acting in the ordinary course of its business, as the relevant inquiry is whether HK was seeking legal advice, and/or engaging the services of

---

[18] R. Doc. 49, p. 15.

[19] R. Doc. 58.   In conjunction therewith, Continental submitted the Declaration of H&K's general counsel, Stephen Farkas in further support of its privilege objections.  R. Doc. 58-2.

[20] R. Doc. 64.

[21] R. Doc. 68.

[22] R. Doc. 86.

[23] R. Doc. 71. Therein, H&K offered to provide the Court with its privileged documents or a relevant sample of documents for an *in camera* review. R. Doc. 71-4, p. 10.  By its proposed intervention, H&K sought a "protective order against production of HK's privileged communications and information and/or to join in Continental Enterprises' motion to certify the discovery order for interlocutory appeal."   The Court denied as moot H&K's alternative request to join in Continental's Motion for Certification under § 1292(b) because Continental's motion for certification had been denied at the time of the Court's ruling on H&K's Motion to Intervene. R. Doc. 90.

[24] R. Doc. 71-4, p. 4. Based on the overbreadth/relevancy ruling, H&K submitted a revised privilege log related to email communications for which it sought protection.  H&K did not revise the privilege log related to its investigative files.  *See*, R. Doc. 71-4, n. 1.

4

Continental Enterprises, in anticipation of litigation concerning infringement of HK's rights in its G36."[25]   On December 29, 2015, this Court denied H&K's Motion to Intervene.  On January 27, 2016, H&K filed a notice of appeal appealing this Court's denial of the Motion to Intervene.[26] That appeal remains pending.[27]

Following H&K's notice of appeal, Plaintiff filed his Second Motion to Compel.[28] Therein, Plaintiff complains that "Continental's position is that it will not produce the withheld documents and communications until H&K's appeal of the Court's denial of its Motion to Intervene is resolved."[29]  Plaintiff further argues that Continental "cannot use a non-party appeal as a shield from producing documents and communications which the Court ordered it to produce,"[30] and seeks an order compelling Continental's compliance with this Court's April 20,

---

[25] R. Doc. 71-4, p. 3.

[26] R. Doc. 97.

[27] H&K's appeal is focused on the "single issue" of whether this Court's denial of its motion for "leave to intervene for purposes of filing a motion for protective order against the production of privileged documents where HK is the holder of the privilege." *Michael Swoboda v. Karl Manders, et.al*, No. 2016-30074, United States Court of Appeals for the Fifth Circuit, Brief of Appellants Heckler & Koch, Incorporated; Heckler & Koch, GMBH, p. 2. In *Griggs v. Provident Consumer Discount Co.*, the Supreme Court held that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the trial court of its control over those aspects of the case involved in the appeal." 459 U.S. 56, 58 (1982).  The Court recognizes that H&K's appeal divests it of jurisdiction over the issue of H&K's right to intervene under Fed. R. Civ. P. 24(a)(2); however, this Court retains jurisdiction over "those aspects of the case" not involved in H&K's appeal, including Plaintiff's pending Second Motion to Compel. *See, e.g., City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291, 293 (5th Cir. 2012) (noting that during pendency of interlocutory appeal of denial of petition of intervention, lower court issued an interlocutory judgment on cross motions for summary judgment). *See also, Mausolf v. Babbitt*, 125 F.3d 661, 666 (8th Cir. 1997) ("'If final judgment is entered with or after the denial of intervention,…the applicant should be permitted to file a protective notice of appeal as to the judgment, to become effective if the denial of intervention is reversed.' A contrary rule would prevent a prospective intervenor who successfully appeals from the district court's denial of his intervention motion from securing the ultimate object of such motion – party status to argue the merits of the litigation – if, as was the case here, the appellate court does not resolve the intervention issue prior to the district court's final decision on the merits.") (quoting 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3902.1, at 113 (2d ed.1991)).

[28] R. Doc. 98.

[29] R. Doc. 98-1, p. 4.

[30] R. Doc. 98-1, p. 5.

2015 ruling on Plaintiff's original Motion to Compel.[31]  Continental has filed a response to the Second Motion to Compel.[32]  Therein, Continental asserts that this Court should "defer" any ruling on the motion until resolution of H&K's pending appeal and argues that "if the Court were to grant the relief sought by Swoboda, it would be effectively denying HK's opportunity to have a meaningful appellate review by the Fifth Circuit."[33]  Continental further asserts that there is no compelling reason why production should be immediately required because, at present, there is no trial date or discovery deadline set, no other outstanding discovery, and no depositions currently scheduled.[34]

On May 11, 2016, the Court held a hearing on Plaintiff's Second Motion to Compel.  Based on H&K's previous attempt to intervene and H&K's pending appeal, the Court invited counsel for H&K to participate in the hearing as an interested party.  During the hearing, the parties presented argument regarding the applicability of the work product and/or attorney client privilege to the documents sought, as well as Plaintiff's substantial need for the requested information and hardship in obtaining the information from other sources.  The Court took the matter under advisement and is now ready to rule.

---

[31] R. Doc. 98-1, p. 5.  Plaintiff also notes that this Court may issue sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) and seeks an order from this Court requiring Continental to pay Plaintiff's costs and attorney's fees in connection with the Second Motion to Compel.  *See*, R. Doc. 98-1, p. 5 & R. Doc. 98-2.  The Court declines to reapportion expenses for Plaintiff's Second Motion to Compel and finds an award of expenses in this circumstance would be unjust.  *See*, Fed. R. Civ. P. 37(a)(5)(C) & 37(b)(2)(C).  *See also*, *Kempton v. Maritime Systems, Inc.*, 2013 WL 3070890, at *11 (E.D. La. June 17, 2013) (where discovery requests are granted in part and denied in part, "Court has discretion to apportion attorney's fees and costs under Rule 37(a)(5)(C).  The Court exercises its discretion and declines to award fees in this instance."); *Dugas v. Mercedes-Benz USA, LLC*, 2014 WL 458083, at *2 (W.D. La. Feb. 3, 2014) ("Having granted the motion in part and denied it in part…[an award of costs and attorneys' fees] is not mandatory.  Instead, the undersigned is authorized by Fed. R. Civ. P. 37(a)(5)(C) to apportion the reasonable expenses of the motion in his discretion.  In this case, there is no compelling reason for the imposition of such an award.  Therefore, to the extent [movant's] motion seeks the recovery of costs, expenses, or attorneys' fees, the motion is denied.").

[32] R. Doc. 101.

[33] R. Doc. 101, p. 2.

[34] To the extent this suit has stalled due to the ongoing privilege dispute, this Court finds that the fact this matter was filed more than two years ago is reason enough to press the parties to move forward.

## II.     Law and Analysis

### A.   Attorney Client Privilege

"'[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice.'"  *King v. University Healthcare Sys., Inc.*, 645 F.3d 713, 720 (5th Cir. 2011) (quoting *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 720 (5th Cir. 1985)).[35]  "'The attorney-client privilege protects two related, but different, communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client.'"  *Bross v. Chevron USA, Inc.*, 2009 WL 854446, at *3 (W.D. La. March 25, 2009) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 438-39 (N.D.Tex. 2006) citing *U.S. v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D.Tex.1993)).

The party invoking the privilege has the burden of demonstrating its applicability.  *King v. University Healthcare Sys., Inc.*, 645 F.3d 713, 720 (5th Cir. 2011) (quoting *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 720 (5th Cir. 1985)).  A party invoking the attorney-client privilege must establish: (1) that there was a communication between client and counsel; (2) the communication was intended to be confidential; (3) the communication was, in fact, kept confidential; and (4) the communication was made for the purpose of obtaining or providing legal

[35] Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege. Nonetheless, "federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege." *Akins v. Worley Catastrophe Response, LLC*, 2013 WL 796095, at *11 (E.D. La. March 4, 2013); *see also Soriano v. Treasure Chest Casino, Inc.*, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996) (federal "common law and Louisiana statutory law are materially similar in this case in regards to attorney-client privilege").

advice." *Bross v. Chevron USA, Inc.*, 2009 WL 854446, at *3 (W.D. La. March 25, 2009) (citing *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996)).[36]

Continental asserts that its email correspondence (both its internal communications and communications between Continental and H&K's in-house counsel) are protected by the attorney-client privilege. However, Continental does not explain in its briefing how the privilege applies. During the May 11, 2016 hearing, counsel for H&K explained, however, that Darlene Seymour is in-house counsel for Continental and has served as H&K's counsel of record in intellectual property litigation involving GSG and a different gun in the Southern District of Indiana.[37] Counsel for both Continental and H&K urged this Court to follow a previous ruling from the Southern District of Indiana which found certain documents and communications between Continental and H&K to be privileged.

Per the Declaration of Mr. Jeremiah Pastrick, Vice President and Intellectual Property Counsel for Continental, "Continental is a company that provides intellectual property investigation and enforcement services to its clients."[38] Mr. Pastrick asserts that H&K's in-house counsel, Mr. Stephen Farkas, "directed Continental to investigate GSG's potential infringement (including counterfeiting) of H&K's G36 submachine gun. Continental understood that Farkas sought this information as part of his evaluation of potential claims that H&K might bring against

---

[36] Both the client and his or her lawyer or the lawyer's representative may claim the privilege; however, as the holder of the privilege, only the client may waive it. *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, Inc.*, 2014 WL 29451, at *6 (M.D. La. Jan. 3, 2014). Like the work product privilege, when the attorney-client privilege holder makes a confidential communication a material issue in litigation, "fairness demands treating the defense [or claim] as a waiver of the privilege." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989).

[37] The Court understands that H&K and GSG have a long history of litigation related to the alleged intellectual property infringement of H&K's MP5 firearm. Previous litigation between H&K and GSG regarding the MP5 resulted in an October 2009 settlement. In a second lawsuit filed in the Southern District of Indiana, H&K alleged that GSG breached that settlement agreement and defendants' counterclaim asserted plaintiffs fraudulently represented in the settlement agreement that they owned the intellectual property rights for the MP5 despite having previously assigned those rights. *See*, R. Doc. 31-4.

[38] R. Doc. 31-3, ¶ 4.

GSG."[39]   Mr. Pastrick explains that as part of Continental's investigation, it "generated certain documents and reports concerning GSG and its principals, including Michael Swoboda, and collected other documents concerning these parties. Continental employees also sent and received a number of internal emails related to the GSG/G36 investigation and also sent emails to H&K employees concerning the investigation."[40]

Although Mr. Pastrick asserts in his Declaration that "Continental's IP investigations are highly confidential and the work-product created during those investigation is privileged," the Court does not find anywhere in the Declaration an assertion that Continental was serving as H&K's *counsel with regard to potential litigation related to the G36* or that Continental's communications were rendered for the purpose of providing *legal* advice. While Mr. Pastrick's Declaration may support a conclusion that Continental's investigatory materials and communications are work product, it does not support a conclusion that these materials and communications are attorney-client communications.[41]   However, the Court recognizes that at the time of Continental's investigation of Mr. Swoboda and the G36, H&K was involved in other intellectual property litigation with GSG regarding a different gun and that Darlene Seymour was serving as counsel of record for H&K in that litigation.   The Court finds it reasonable to assume

---

[39] R. Doc. 31-3, ¶ 6.

[40] R. Doc. 31-3, ¶ 6.

[41] The Court recognizes that "investigation may be an important part of an attorney's legal services to a client." *In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997).   Even so, "not all communications between an attorney and client during attorney-conducted investigations constitute legal work entitled to attorney-client privilege.   For example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer." *Id.*  Accordingly, even to the extent this Court found Continental's investigation to be within the scope of an attorney's investigation as part of Continental's rendition of legal services (which Continental has not established), certain communications related solely to Continental's investigative work which did not require legal analysis would still fall outside of the attorney-client privilege. *See also*, *U.S. v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) (explaining that work papers produced by an attorney in the course of preparing client's tax returns were not privileged "because although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service.   Communications relating to that service should therefore not be privileged, even though performed by a lawyer.")

that H&K would confer with Ms. Seymour for purposes of obtaining legal advice related to the G36 in light of her representation of H&K in the Indiana litigation.

The Court finds that to the extent H&K communicated with Ms. Seymour for the purpose of obtaining legal advice, and to the extent Ms. Seymour rendered legal advice to H&K, such communications fall within the scope of the attorney-client privilege. However, Continental has not carried its burden of establishing that communications with other individuals fall within the scope of the attorney-client privilege. Accordingly, Continental is hereby ORDERED to revisit its previous withholdings to make a supplemental production of any documents that do not involve communications by or to Ms. Seymour for the purpose of rendering or obtaining legal advice.

## B. Work Product Privilege

### 1. Existence of Work Product

Pursuant to Fed. R. Civ. P. 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation* or for trial by or for another party *or its representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.)" (emphasis added). However, such materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. "The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation." *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013).[42]

---

[42] Continental asserts that it is H&K's agent and therefore can assert the privilege. *See*, R. Doc. 31, pp. 19-20. In addition, H&K previously moved to intervene in this suit as the "holder of the attorney-client and work product privileges that have been asserted" and asserted that "[d]isclosure of HK's privileged information will cause irreparable harm to HK in that such disclosures cannot be reversed." R. Doc. 71-4, p. 2 & 4. Based on both Continental's and H&K's pleadings, the Court considers the privilege to be properly invoked.

"It is not dispositive that some documents were not prepared by attorneys. Rule 26(b)(3) protects from discovery documents prepared by a party's agent, as long as they are prepared in anticipation of litigation." *Naquin v. UNOCAL Corp.*, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002). *See also*, *Southern Scrap Metal Co. v. Fleming*, 2003 WL 21474516, at * 6 (E.D. La. June 18, 2003) ("The [work product] doctrine protects not only materials prepared by a party, but also materials prepared by a co-party, or representative of a party, including attorneys, consultants, agents, or investigators."); *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013) (same).

"The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes." *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013). While "[w]ork product protection extends to documents and tangible things that are prepared in anticipation of litigation by a party or its representative, [the privilege] does not extend to the underlying relevant facts or to documents assembled in the ordinary courts of business." *Williams v. United States Environmental Services, LLC*, 2016 WL 617447, at *4 (M.D. La. Feb. 16, 2016).

"To determine whether a document is protected from disclosure by the work-product doctrine, the threshold question is whether the document was prepared in anticipation of litigation." *In re Vioxx Products Liability Litigation*, 2007 WL 854251, at *3 (E.D. La. March 6, 2007). In the Fifth Circuit, "the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) citing *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). "To determine the primary motivation for the creation of a document, courts look to a variety of factors, including, 'the retention of counsel and

his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013) (citing *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414 at *5 (E.D. Tex. July 9, 2003)).

In opposition to Plaintiff's original Motion to Compel, Continental asserted that it was hired by H&K to investigate Plaintiff's suspected violation of H&K's intellectual property rights and that the investigation "was directed by H&K's in-house counsel, Stephen Farkas."[43] Continental explained that "[t]he purpose of the investigation was to collect evidence regarding Swoboda's activities" and that "Farkas was collecting the evidence as part of his evaluation of potential legal action and claims that could be taken by H&K against Swoboda for violation of IP rights related to the G36."[44] Further, Continental asserted that its employees "corresponded regularly with H&K's in-house counsel about the Swoboda investigation and potential claims that might be asserted in litigation related to the G36."[45]

In granting Plaintiff's first Motion to Compel, the Court noted that Continental's "customary, regular business activity is to conduct the types of investigations that led to the plaintiff's arrest…."[46] The Court went on to reason that "[i]t is undisputed that Continental was doing the job it was hired to do – investigating the plaintiff's activities with regard to the G36. The communications and documents were created during the ordinary course of its business, and

---

[43] R. Doc. 31, p. 19.

[44] R. Doc. 31, p. 20.

[45] R. Doc. 31, p. 20.

[46] R. Doc. 49, p. 14.

their creation would have occurred regardless of any potential use by H&K."[47] Although the Court was correct that Continental was hired to investigate potential intellectual property infringement and that such investigation is Continental regular business, the Court now finds that the analysis should focus on H&K's usual business and its purpose in retaining Continental for this investigation.

H&K is a U.S. based company that "manufactures and sells an extensive range of firearms for military, law enforcement and civilian use, including the G36 submachine gun."[48] Mr. Farkas' Declaration indicates that H&K "has an active history of litigation concerning its intellectual property rights," and has retained Continental to conduct multiple investigations regarding potential infringement.[49] Moreover, H&K asserts that it hired Continental in this instance based on H&K's belief that Continental was selling an unauthorized version of its G36 airsoft gun and that at the time the investigation was initiated, H&K was involved in intellectual property litigation with Mr. Swoboda's company in Indiana.[50] Accordingly, such investigation would be more closely aligned with pre-litigation scientific evaluation of possible patent infringement rather than part of H&K's usual business. *See, Innovative Sonic Ltd. v. Research in Motion, Ltd.*, 2013 WL 775349, at *2 (N.D. Tex. March 1, 2013) (collecting cases and stating that it had "little difficulty" concluding that materials pertaining to pre-litigation infringement testing of defendant's products

---

[47] R. Doc. 49, p. 14.

[48] Farkas Declaration, R. Doc. 58-2, ¶ 3.

[49] In Mr. Pastrick's Declaration, he states that "[i]n the past five years, Continental has conducted 76 investigations at the direction of H&K. Of those, only 24 relate to the H&K G36 model submachine gun (which is at issue in this lawsuit). Of those investigations involving the G36, only one investigation involves Swoboda." R. Doc. 31-3, ¶ 5.

[50] Farkas Declaration, R. Doc. 58-2, ¶ 6. Per Mr. Farkas, that belief was based on the fact that H&K had only one exclusive licensee (Umarex) for the G36 airsoft gun and that at the time the investigation was initiated, H&K was already "familiar with GSG and its manufacture of unauthorized versions of H&K's products, due in no small part to the fact that H&K was involved in litigation with GSG regarding counterfeit versions of H&K's MP5 firearm since 2009." R. Doc. 58-2, ¶¶ 6 & 9.

were protected work product where testing was conducted at the request of plaintiff's outside counsel in anticipation of litigation). *See also*, *Louis Vuitton Malletier v. Texas Intern. Partnership*, 2012 WL 5954673, at *4 (S.D. Tex. May 14, 2012) (communications with investigators regarding potential intellectual property infringement were protected work product because "Louis Vuitton was clearly anticipating litigation by the time it sent the first [cease and desist] letter. Thus, any communications with its investigators regarding the shops in the Center on or after May 15, 2009, were prepared in anticipation of litigation and are work product."); *Kansas City Southern Ry. Co. v. Nichols Const. Co., LLC*, 2007 WL 2461014, at *3 (E.D. La. Aug. 27, 2007) ("In general, investigative reports prepared by agents of the party or the party's attorney are protected by the work product doctrine.").[51]  The Court finds that, based on H&K's previous and ongoing litigation with Mr. Swoboda related to other firearms, H&K "had an objectively reasonable subjective belief that litigation was a real possibility" at the time it communicated with Continental regarding an investigation of possible intellectual property infringement related to the G36.[52]

---

[51] During the May 11, 2016 hearing, counsel for Plaintiff directed the Court to the Eastern District's decision in *Global Oil Tools, Inc. v. Barnhill*, 2013 WL 1344622 (E.D. La. April 3, 2013).  There, the court found a forensic accounting report generated on behalf of Global Oil was not protected work product.  In so holding, the court pointed out that no steps were taken to "insulate [the report] with work product protection" (such as referencing the attorney client privilege or work product doctrine), the report was not composed at the direction of Global Oil's attorney, and the report "was clearly designed to investigate a set of facts which supported Global Oil's criminal complaint against [defendants]."  The Court does not read *Global Oil* to require a finding that any time a criminal complaint is anticipated, work product protection does not apply.  Indeed, the Supreme Court has recognized that the work product doctrine applies to criminal as well as civil litigation.  *U.S. v. Nobles*, 422 U.S. 225, 236 & 237 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital.").  *See also*, *U.S. v. Mann*, 61 F.3d 326, 331 (5th Cir. 1995) ("It is true that the work product privilege does apply in criminal cases.").

[52] In the insurance context, "courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies.  Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work produce protection." *Piatkowski v. Abdon Callais Offshore, LLC*, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000).  *See also*, *Kansas City Southern Ry. Co. v. Nichols Constr. Co., LLC*, 2007 WL 2461014, at *4 (E.D. La. Aug. 27, 2007) ("In the realm of insurance claims and litigation, the analysis of whether documents were prepared in anticipation of litigation becomes more complicated.  This is primarily because insurance companies are in the business of conducting, investigating and evaluating claims against its policies….To show that a document was prepared in anticipation of litigation, courts have required that the insurer point to a 'critical factor that made it anticipate litigation…and offer specific facts

While this Court finds that Continental has met its burden of showing that its investigation *in this particular instance* was conducted in anticipation of litigation, the Court questions inclusion of some of the documents listed on Continental's investigative file log. For example, Continental apparently has withheld "copies of GSG catalogs obtained from the internet," other catalogs, price lists, and travel itineraries.[53]

This Court has recently found that emails regarding employee training, mandatory reporting of data, and reports compiling purely factual data are not subject to attorney client privilege or work product protection. *See*, *U.S. v. Louisiana*, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015) (citing *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982) (privilege does not protect "materials assembled in the ordinary course of business, or pursuant to public requirements"); *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir.2011) (materials prepared pursuant to regulatory requirements, in the ordinary course of business or for other non-litigation purposes are not protected.); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 693–94 (D.Kan.2000) (the court explained it was "at a loss to even imagine how" any of the requested employer "policies, guidelines, [and] training manuals" would "fall within the scope" of the attorney client privilege or work product doctrine); *Bartram, LLC v. Landmark American Ins. Co.*, No. 10–28, 2011 WL 284448, at *2–3 (N.D.Fla. Jan. 24, 2011) (The requested "presentations and training programs [ ] are not subject to the work product privilege because the documents were created by Ms. Spence for the purpose of advising Plaintiff and Foram about workers compensation and employment practices liability, and not for any reason or use connected to this

---

demonstrating that the critical factor did indeed make the insurer deal with the insured in a different way."). While Continental is in the "investigation" business, its business is far afield from that of an insurer who is required (by contract or statute) to evaluate each claim. Here, H&K allegedly hired Continental *after* it suspected infringement of particular intellectual property rights and while it was in litigation with GSG regarding other intellectual property rights.

[53] *See*, R. Doc. 26-4.

litigation."); *Pfizer Inc. v. Ranbaxy Laboratories Ltd.*, No. 03–209, 2004 WL 2323135, at *1–2 (D.Del. Oct. 7, 2004) ("Factual information, technical data, the results of studies, investigations and testing ... and other factual information is discoverable" and not protected by the attorney client privilege or work product doctrine); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 109 (S.D.N.Y.2000) ("Given the purely factual nature of the documents in question," which consisted of compilations of data, there can be no "good faith basis" for the assertions of attorney client privilege.)). Based on the Court's review of Continental's privilege logs, Continental is hereby ORDERED to revisit its previous withholdings to make a supplemental production of any documents or portions of documents that were obtained from publicly available sources or which contain purely factual data.

### 2.   Disclosure of Work Product

As noted above, documents and tangible things prepared in anticipation of litigation may be discoverable when the party seeking same "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(iii). "The party who is seeking production of the document otherwise protected by the work product doctrine bears the burden of establishing that the materials should be disclosed." *Conoco, Inc. v. Boh Bros. Constr. Co.*, 191 FRD 107, 118 (W.D. La. 1998). "The burden on the party seeking protection varies with respect to the nature of the work product sought." *Id*.

"'Ordinary' work product will be ordered produced 'only upon a showing that the party seeking discovery has a substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" *Conoco, Inc. v. Boh Bros. Constr. Co.*, 191 FRD 107, 118 (W.D. La. 1998) (citing

Fed. R. Civ. P. 26(b)(3) and *Thomas v. General Motors Corp.*, 174 FRD 386, 388 (E.D. Tex. 1997)). With respect to the undue hardship prong of this test, "discovery of work product will be denied if a party can obtain the information he seeks by deposition." *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982). *See also*, *In re Hardwood P-G, Inc.*, 403 BR 445, 464 (W. D. Tex. 2009) ("Undue hardship can be demonstrated if witnesses cannot remember key facts or are unavailable for depositions or if there is unusual expense incurred [in] interviewing or discovering the sought-after person or information, as the case may be."). With regard to "substantial need," "[s]ome case have found substantial need by emphasizing the importance of the documents themselves. One common justification for discovery is the claim which relates to the opposite party's knowledge that can only be shown by the documents themselves." *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1241 (5th Cir. 1982) (noting *Kirkland v. Morton Salt Co.*, 46 FRD 28 (N.D. Ga. 1968) (in malicious prosecution suit, plaintiff was entitled to information regarding payment by plaintiff prior to defendant's garnishment suit to show defendant's knowledge that suit was groundless) and *Shapiro v. Allstate Ins. Co.*, 44 FRD 429 (E.D. Pa. 1968) (in insured's suit for bad faith handling of claim, letters written to liability insurer by its attorneys concerning tort action were ordered produced). *See also*, *In re Hardwood P-G, Inc.*, 403 BR 445, 464 (W. D. Tex. 2009) ("Substantial need may be shown where the information is only discoverable with the documents at issue themselves.")).

"'Opinion' work product…which conveys the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' has been accorded almost absolute protection from discovery by some courts." *Conoco, Inc. v. Boh Bros. Constr. Co.*, 191 FRD 107, 118 (W.D. La. 1998) (citing *Thomas v. General Motors Corp.*, 174 FRD 386, 388 (E.D. Tex.

1997); *Spotck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982)).   However, opinion  work product becomes subject to disclosure  if "'mental impressions  are at issue in a case and the need for the material is compelling.'"   *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998) (citing  *Holmgren v. State Farm Mutual Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992) (opinion  work product discoverable in bad faith insurance settlement case because in such case "mental impressions  are *at issue*…and the need for the material is compelling."); *Biggers v. State Farm Insurance Co.,* 1993 WL 408375 (E.D.La.1993); *Bird v. Penn Central Co.,* 61 F.R.D. 43 (E.D.Pa.1973); *Dixie Mill,* 168 F.R.D. at 559 (to obtain attorney opinion  work product, plaintiff must show a compelling  need under Rule 26(b)(3))).[54]

Continental  argued in opposition  to Plaintiff's original Motion to Compel that "a party's failure  to seek information  through deposition  negates a finding  of either undue hardship  or substantial need….In this case, Swoboda has not taken a single deposition  to demonstrate undue hardship or substantial need…."[55] In response, Swoboda argued that "[a]ny deposition  questioning delving  into allegedly privileged  issues would  be met with objection.   Also, the materials themselves,  which is what the work product covers, cannot be obtained  through  depositions  and

---

[54] Opinion work product may also be subject to disclosure pursuant to the crime-fraud exception to discovery. *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998) citing *In Re International Systems,* 693 F.2d at 1242.  "The crime-fraud exception applies to both the attorney-client and work product privileges."  *In re EEOC*, 207 Fed. Appx. 426, 434 (5th Cir. 2006).  "Pursuant to the crime-fraud exception, privilege is overcome when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity.  The party seeking discovery of privileged information bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity."  *Id.* (internal citations omitted).  Here, Plaintiff asserts that Defendants intended to fraudulently set up Mr. Swoboda. R. Doc. 26-1, p. 23.  However, other than his allegations, Plaintiff has presented no evidence to show that the elements of the crime-fraud exception have been met.  Accordingly, Plaintiff has not met his burden of establishing that the crime-fraud exception applies here. *See*, *e.g.*, *In re EEOC*, 207 Fed. Appx. 426, 434 (5th Cir. 2006) ("The only evidence of fraud in this case is [defendant's] argument and evidence that the EEOC's lawsuit was frivolous, which does nothing to distinguish it from the many other cases in which the defendant believes the plaintiff's claims are meritless.  We do not construe the crime-fraud exception so broadly.");

[55] R. Doc. 31, p. 25.

are needed to properly prepare for the depositions.  Without the documents, there is no way to test Defendants' answers in depositions or their defenses."[56]

The Court notes that "the mere assertion that life would be easier if only [a party] had access to [work product] is insufficient to qualify for the undue hardship exception to the work product doctrine." *In re Hardwood P-G, Inc.*, 403 BR 445, 465 (W.D. Tex. Bankr. April 10, 2009). Moreover, Plaintiff does not dispute that he has not taken any depositions or presented any other evidence of substantial need and undue burden.[57]  Although the Court understands Plaintiff's insistence that the nature of his claims requires disclosure of these documents, without some sort of showing of need and burden, the Court cannot consider requiring such disclosure at this stage of the litigation.   *See*, *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir 1982) ("On the record before us, plaintiff has only taken one deposition. We think a more particularized showing must be made before production can be ordered by the district court.").[58]

### C.  Disclosure of Underlying Factual Information

As noted above, even if the documents Plaintiff seeks are protected work product, underlying facts are not so protected.  *Williams v. United States Environmental Services, LLC*,

---

[56] R. Doc. 35, p. 16.

[57] Moreover, Plaintiff has not provided any evidence that he has attempted to obtain this information in other ways such as issuing a subpoena to H&K.

[58] In response to Plaintiff's original Complaint, Defendants affirmatively asserted that "there was reasonable, probable cause to find that plaintiff committed a crime…."  R. Doc. 18, p. 2.  Defendants have not yet filed an answer to Plaintiff's Amended Complaint.  However, in the parties' Joint Status Report, Defendants again contended that they "acted lawfully in their investigation of plaintiff's trademark infringement and their cooperation with law enforcement." R. Doc. 12, p. 6.  The Court notes that "opinion work product may be disclosed when the holder waives the protection by placing the protected material 'at issue' in the litigation."  *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, 2014 WL 29451, at *7 (M.D. La. Jan. 3, 2014).  Even so, "[t]he party seeking discovery of opinion work product must show a compelling need for the information and an inability to obtain it otherwise." *Id*. Plaintiff has not met his burden here.  *See also*, *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1241 (5th Cir. 1982) (noting that while some courts have found "substantial need" based on a "claim which relates to the opposite party's knowledge than can only be shown by the documents themselves," the district court should "[n]evertheless…determine if A.Y.'s knowledge can be discovered without the work product….").

2016 WL 617447, at *4 (M.D. La. Feb. 16, 2016) ("Work product protection extends to documents and tangible things that are prepared in anticipation of litigation by a party or its representative, [the privilege] does not extend to the underlying relevant facts or to documents assembled in the ordinary courts of business."). *See also*, *Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 559 (E.D. La. July 10, 1996) ("The reasonableness of the insurers' actions in a bad faith case can be proved by objective facts, which are not shielded from discovery and do not *necessarily* require the introduction of privileged communications at trial.").

Plaintiff is entitled to discover the facts which were learned during Continental's investigation. *See, e.g.*, *Bear Republic Brewing Co. v. Central City Brewing Co.*, 275 F.R.D. 43, 45 (D. Mass. 2011) (defendant's investigator's file in trademark and trade dress infringement action was work product; however, during deposition, investigator was required to answer questions "'which seek to discover all relevant facts in the case, regardless of whether those facts were discovered in their roles as defendants' investigators....' Thus, any reports [investigator] prepared for [defendant's counsel] would not be discoverable (absent waiver), but the **facts** recited in the reports would be.") (quoting *Laxait v. McClatchy*, 116 F.R.D. 438, 442-43 (D. Nev. 1987)). Continental is hereby ORDERED to produce to Plaintiff any documents or portions of documents which contain purely factual information.

III.     **Conclusion**

For the reasons set forth herein, Plaintiff's Second Motion to Compel[59] is GRANTED IN PART AND DENIED IN PART. Continental is instructed to produce documents as set forth herein within fifteen (15) days of the date of this Ruling.

---

[59] R. Doc. 98.

The Court further instructs the parties to move forward with their discovery efforts. This Ruling is without prejudice to Plaintiff re-urging a motion to compel production of otherwise protected work product upon a particularized showing of substantial need and undue hardship.

In accordance with this Court's advisement during the May 11, 2016 hearing, the Court sets a conference on June 16, 2016 at 8:30 in chambers to discuss scheduling. The parties' status report is due on June 2, 2016.

Signed in Baton Rouge, Louisiana, on May 19, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**